## STATE OF CONNECTICUT *v.* KYLE S.*

Superior Court, Judicial District of Tolland
File No. T19R-CR08-0091564-S

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Superior Court.

An appeal to the Appellate Court was filed by the state on September 16, 2008, Docket No. AC 30376. On February 4, 2009, the appeal was withdrawn.

Memorandum filed December 12, 2008

*Douglas A. Ovian*, for the defendant.

*Nicole I. Christie*, assistant state's attorney, for the state.

*Trudy Condio*, guardian ad litem.

A. SANTOS, J. On August 27, 2008, this court dismissed the above-captioned matter. The state subsequently filed a request to appeal from the final judgment, which was granted on August 29, 2008, and after which the state filed the appeal on September 16, 2008. The court indicated in its order granting the request to appeal that it would file a memorandum of decision more fully articulating the bases for the dismissal of this case. What follows is that articulation.

The defendant in this case, Kyle S., whose date of birth is January 14, 1992, was arrested on or about March 18, 2008, and charged with one count of disorderly conduct in violation of General Statutes § 53a-182. The offense occurred in the family residence, and Kyle's father was the alleged victim. Kyle appeared before this court on March 19, 2008, and was advised of his rights. At that time, the family relations officer (officer) indicated that Kyle was "struggling with some significant mental health issues that have impacted his ability to attend school as well as function productively within the household." The officer also indicated that

the police had been to the residence no less than fifty times in the year preceding this incident,[1] although Kyle's father corrected the time frame as being the four years preceding this incident. Thus, from age twelve on, Kyle has been a seriously troubled youth with serious mental health issues.

The officer also informed this court that the department of children and families (department) had been involved with Kyle since 2005, that there were mental health treatment providers who went to the home to provide services[2] and that several interventions had been attempted without any apparent success. According to the officer, the situation in Kyle's home had been escalating, residential placement had been considered and Kyle had undergone a psychological evaluation in August, 2007. One of the recommendations made by the evaluator, David M. Mantell, a clinical psychologist, was that Kyle should be placed in a residential treatment facility if in-home placement was not working. The officer recommended a residential stay away protective order and asked the court to order temporary custody of Kyle to the department so that he could be placed in a safe environment until he could be placed in a residential treatment facility. The officer indicated to the court that Kyle's parents supported the officer's request for a residential stay away order, an order of temporary custody and a placement plan.

The court then appointed a public defender to represent Kyle, as well as a special public defender with considerable experience in Juvenile Court to be Kyle's guardian ad litem.[3] Attorney Douglas A. Ovian, Kyle's

[1] According to the officer, there had been incidents in the home involving physical violence by Kyle directed not only against his father, but also against his mother and two sisters.

[2] The individuals who provided these in-home services were present in the courtroom on March 19, 2008.

[3] The appointment of attorney Trudy Condio as guardian ad litem extended to proceedings involving Kyle in Juvenile Court. This appointment was

appointed public defender, indicated that the parents' decision that Kyle could not return to the home essentially rendered him homeless. The purpose of both short-term and long-term solutions was, however, to pave the way to allow him to return to the family home. Attorney Trudy Condio, the guardian ad litem, agreed with attorney Ovian's assessment that it would not be in Kyle's best interest to be detained in either a juvenile detention center or the adult correctional system and that such institutionalization would be detrimental to his well-being. The court agreed with counsels' concerns.

After the department worker who worked with Kyle informed the court that the department was seeking to place him with a foster family, the court orally issued an order of temporary custody. The court noted that it appeared that it was not suitable for Kyle to reside with his parents at that time, in light of the numerous complaints that had occurred in the family home due to Kyle's mental health and other issues. The court additionally ordered that there be a subsequent hearing in Juvenile Court on the order of temporary custody. The court then issued a protective order and referred the case to the family relations division of the Superior Court to oversee and supervise Kyle while his case was pending.

The court thereafter entered orders that Kyle refrain from imposing any restraint on the person or liberty of his father, refrain from enumerated actions vis-a-vis the father, and that the defendant cooperate with the department and comply with all treatment, including mental health compliance and medications. It rapidly became apparent to Kyle's counsel, the guardian ad litem and the court that Kyle did not fully understand

intended to achieve continuity and consistency between the youthful offender proceedings before this court and the Juvenile Court proceedings.

the criminal protective order and its consequences. The officer again explained the orders to Kyle, who indicated that he understood them and would comply with them. The court additionally ordered that Kyle undergo an assessment at Riverview Hospital.[4]

Then both the public defender and the guardian ad litem expressed concerns, on the basis of their client's mental status, about the potential additional felony charge should Kyle violate the criminal protective order. On the basis of these concerns, the court reconsidered the criminal protective order and, instead, entered similar orders as part of a written promise to appear, which thus superseded the protective order. The court left in place the referral to the family relations division.

The state's prosecuting attorney sought to ensure that Kyle not be permitted to return to the family residence. The court noted that this was a condition of the promise to appear but that the court explicitly was deferring to the Juvenile Court to modify or to vacate that condition, in particular should Kyle's family conclude that he was well enough to return to the family residence. The matter was continued to April 9, 2008, a date subsequent to the required Juvenile Court proceedings following the court's order of temporary custody.[5]

The parties again appeared before the court as scheduled on April 9, 2008. Present were Kyle's public defender, guardian ad litem, mother, the department

---

[4] "Riverview Hospital for Children and Youth is the only state-administered psychiatric hospital for Connecticut's children who are under the age of eighteen. The hospital provides comprehensive care to children and adolescents with severe mental illness and related behavioral and emotional problems who cannot be safely assessed or treated in a less restrictive setting."

http://www.ct.gov/dcf/cwp/view.asp?a=2675&Q=320944 (11/24/2008).

[5] It was indicated at that time that the Juvenile Court hearing on this court's order of temporary custody was scheduled for March 28, 2008.

worker and therapist, as well as a representative from the in-home placement program, IICAPS. Attorney Ovian reported that the efforts in Juvenile Court had been successful, and that Kyle had been referred to Connecticut Junior Republic[6] and was awaiting placement. Attorney Ovian also apprised the court that the Juvenile Court had assumed its proper role in the matter and provided all of the social services that were needed for Kyle.

Attorney Condio, Kyle's guardian ad litem, informed the court that Kyle was awaiting commitment to the department when the Juvenile Court proceedings next resumed. Attorney Condio indicated that the department's involvement with Kyle had been lengthy and that he had received IICAPS services.[7] Additionally, Kyle had received multisystemic therapy.[8] According to attorney

[6] "The Connecticut Junior Republic (CJR) is a private non-profit organization dedicated to helping troubled youth become productive members of their communities. CJR accomplishes its mission of service by providing residential and community-based care, treatment and education programs to help troubled boys and girls and their families."

http://www.ctjuniorrepublic.org/ (11/28/2008).

[7] IICAPS stands for Intensive In-Home Child and Adolescent Psychiatric Services. "IICAPS provides home-based treatment to children, youth and families in their homes and communities. Services are provided by a clinical team which includes a Master's-level clinician and a Bachelor's-level mental health counselor. The clinical team is supported by a clinical supervisor and a child & adolescent psychiatrist. IICAPS Services are typically delivered for an average of 6 months. IICAPS staff also provide 24-hour/7-day emergency crisis response. . . . IICAPS offers intensive clinical services and support to children and youth returning from out-of-home care or who are at risk of requiring out-of-home care due to psychiatric, emotional, or behavioral difficulties. Eligibility for IICAPS services does not require DCF-involvement. Referrals to IICAPS are typically made by the DCF Area Offices, System-of-Care Collaboratives, inpatient psychiatric hospitals, and community providers."

http://www.ct.gov/dcf/cwp/view.asp?a=2558&Q=314366 (12/1/2008).

[8] "Multisystemic Therapy provides home-based treatment to children, youth and families in their homes and communities. Services are provided by a Master's-level therapist. Services are typically delivered for an average of 5 to 6 months. MDFT staff also provide 24-hour/7-day emergency crisis response. . . . Multisystemic Therapy offers intensive clinical services and

Condio, there had also been several family with service needs petitions.[9] These various services had preceded this court's order of temporary custody and the ensuing uncared for petition on the ground of specialized needs. Attorney Condio stated that the uncared for petition was specifically selected because of the greater likelihood of Kyle remaining within a residential program. Attorney Condio also expressed concern about Kyle's competence and ability to complete a canvass by the court, a concern shared by the court.

The court then addressed the family's ability to participate in Kyle's treatment, in particular how a protective order might limit Kyle's father, the victim in this matter, from having a relationship with Kyle. The prosecuting attorney indicated that the protective order did not mandate that there be no contact between Kyle and his father; instead, it only put in place restrictions on the ability to go to the house and prohibitions from committing further crimes. The purpose of the protective order was to protect the victim father. Both attorneys Condio and Ovian voiced concerns that a violation by Kyle of the criminal protective order would subject him to significant criminal repercussions. Attorney Condio

support to children and youth returning from out-of-home care or who are at risk of requiring out-of-home care due to problems of delinquency, disruptive behavior and/or substance abuse. Eligibility for MST services does not require DCF-involvement. Referrals to MST are typically made by the DCF Area Offices, System-of-Care Collaboratives, Juvenile Justice staff, and community providers."

http://www.ct.gov/dcf/cwp/view.asp?a=2558&Q=314366#Multisystemic Therapy (MST) (12/1/2008).

[9] "A Families With Service Needs (FWSN) petition provides a basis for responding to the needs of children exhibiting misbehavior considered unlawful only if committed by children younger than sixteen (16) years of age. . . . Behaviors include running away, truancy, defiance of school rules, being beyond the control of the parent/guardian, engaging in immoral or indecent conduct, and engaging in certain sexual activities." Policy Manual. Superior Court For Juvenile Matters, 46-3-31.

http://www.ct.gov/dcf/cwp/view.asp?a=2639&Q=395330 (12/1/2008).

emphasized that there were enough protections in place, and that with Kyle going to Connecticut Junior Republic and family therapy as well as both group and individual work, the protective order was not necessary. Attorney Ovian underscored the risk that the very same issues that brought Kyle before this court on a misdemeanor charge could, should he violate a criminal protective order, potentially expose him to a significant term of incarceration stemming from a felony conviction.

The prosecuting attorney continued to explain the need for a criminal protective order to ensure the victim's safety. The court acknowledged that it did not want to interfere with programs and treatments spawning from the Juvenile Court proceedings that would provide for contact and possible family reunification. In particular, because of the absence of the victim father, the court deferred the protective order to another date, which also allowed the court to follow up with the pending Juvenile Court proceedings. The prosecuting attorney returned to the concerns expressed about Kyle's competency, reminding the court that it had the authority to order a competency evaluation if it had concerns that Kyle was competent. The court indicated its willingness to order such an evaluation and sought responses from Kyle's attorney and guardian ad litem. Both attorneys Ovian and Condio expressed reservations about the utility of a competency evaluation at that stage of the youthful offender proceedings, in particular, given the treatment and programs concomitant with the Juvenile Court proceedings. Attorney Condio indicated that she had received a copy of a report of a psychological evaluation and a two part psychological evaluation, and that a further assessment would occur as a result of the Connecticut Junior Republic placement. The court addressed the possible redundancy of these various psychological

evaluations, and strongly encouraged the release and sharing of such evaluations by the Juvenile Court with counsel in the youthful offender. Such release and sharing would assist the parties to resolve the youthful offender matter properly without necessitating a potentially duplicative evaluation. Accordingly, the court deferred ordering a competency evaluation, and the matter was continued to May 5, 2008.

Counsel appeared before the court on May 5, 2008. Connecticut Junior Republic mistakenly was anticipating a return to court on May 9, necessitating a continuance to June 4. The guardian ad litem then approached the court and provided a copy of Kyle's psychological evaluation, which the court received but did not review. The prosecuting attorney objected to the court's receiving the psychological evaluation at that stage of the proceedings and that it not be placed in the criminal file. The court then returned the psychological evaluation to the guardian ad litem.

The matter next came before the court again on June 4, 2008. Present were assistant state's attorney Nicole I. Christie, one of the prosecuting attorneys in this matter, attorneys Ovian and Condio, attorney Matthew B. Collins, who represented Kyle's parents in both the juvenile and youthful offender proceedings, and Kyle Aiken from the department, as well as Kyle and both of his parents. Attorney Christie indicated that an offer had been extended that day to Kyle to resolve the youthful offender matter. Attorney Ovian confirmed that the state had made an offer, though it had preceded his receipt from attorney Condio of a letter from Connecticut Junior Republic reporting on Kyle's progress.[10] The letter requested that the court not put in place a protective order because it would interfere with, and be detrimental to, Kyle's ongoing treatment. The letter also

---

[10] A copy of the June 3, 2008 letter was provided to the court and is contained in the court's file.

indicated that Connecticut Junior Republic and the family relations division were anticipating that Kyle and his family would progress from unsupervised visits off campus, but not in the home, to returning to the family home for overnight visits. If the overnight visits proved successful, then it would be possible for Kyle to begin weekend home passes.

The court inquired whether Kyle's parents were amenable to his gradual return to the home. Attorney Collins stated that the parents were receptive to Kyle's returning to the home as part of his treatment and that they wanted the court to remove restrictions that interfered with such transitioning. Attorney Collins also reported that Kyle had been making great progress at Connecticut Junior Republic and that the opportunity to gradually transition back to the parents' home would provide an incentive to continue doing well in the program. Kyle's guardian ad litem echoed support for his gradual return to the parents' home as an integral part of his treatment and therapy. After the court asked whether it was being requested that the promise to appear condition that Kyle not return to the home be vacated, and upon the prosecuting attorney's assent that the department have the authority over Kyle's return to the home, the court vacated the prior written promise to appear and ordered a new written promise to appear. The only special condition of the new written promise to appear was that Kyle cooperate with the department.

The court then addressed the continuance of the matter. Attorney Collins inquired whether the matter could be resolved that day, and attorney Ovian reiterated that there was an offer to resolve the matter that day. The court and counsel discussed the progress of the parallel Juvenile Court matters involving Kyle. Attorneys Collins and Condio reported that an uncared for petition on the basis of specialized needs would be addressed in

Juvenile Court several days later and that the recommendation would be that Kyle be committed to the department. Attorney Christie, the prosecutor, emphasized that she did not have any control over what this court would sentence Kyle to if he were to plead guilty to disorderly conduct by way of being a youthful offender. Kyle could plead and there would be no agreement as to the sentence the court would impose. The court then recessed the matter to further discuss with counsel the resolution of the case.

When the matter reconvened, attorney Ovian apprised the court that it would not be appropriate to resolve the matter that day via plea. Instead, attorney Ovian made a request to have a competency evaluation of Kyle performed pursuant to General Statutes § 54-56d. The court inquired what the grounds were for such a request. Attorney Ovian stated that in his efforts to assist Kyle in the youthful offender matter, he had never been able to interact with Kyle without assistance from others. Attorney Ovian strove to explain the dispositional offer made that day and found that Kyle was only able to understand with such additional assistance, which would not be available to him during a court canvass seeking to ascertain Kyle's ability to understand the consequences of a guilty plea.

Because psychological evaluations of Kyle had been performed as part of the Juvenile Court proceedings, the court opted to not order a competency evaluation until it had an opportunity to review existing psychological reports. The court also expressed concern about the consequences of Kyle's being found not competent, especially when viewed together with the fact that he was going to be committed to the department's custody. The court indicated it would continue the matter so it could review existing psychological reports.

Attorney Collins then addressed the court and stated that the continued prosecution of Kyle in the youthful

offender matter was doing a disservice to him. The parents were supportive of the ongoing proceedings and efforts in Juvenile Court, which ultimately sought to provide both Kyle and his family with services and treatment culminating in his return to the parents' home. The court indicated that it could not order or force the state to take unilateral action. Thereafter, the court entered not guilty pleas for Kyle and continued the matter until July 30, 2008, for a pretrial.

The matter came before the court again on July 30, 2008. Present were attorneys Christie, Ovian and Collins. Attorney Condio could not be present, but submitted a letter to the court dated July 30, 2008.[11] In her letter, attorney Condio apprised the court that she did "not believe Kyle is able to comprehend the nature of the charge, the consequences and the significance of the youthful offender program. [She] believe[d] we should allow Connecticut Junior Republic to work toward the behavior modifications which the family sought so hard for Kyle to receive. According to the department, despite his struggles, Kyle has made improvements. Connecticut Junior Republic is committed to Kyle's ongoing progress." Attorney Condio asked that the matter be continued and reach a final disposition on July 30.

The court and counsel who were present discussed the status of the proceedings going on in both Juvenile Court and the youthful offender docket. The court emphasized that the state was not required to cease prosecuting a case if it believed it was necessary to protect the citizens of Connecticut and asked Kyle's attorney how he intended to proceed. Attorney Ovian provided to counsel and the court a letter dated July 30, 2008, from attorney Condio addressed to him.[12] The letter communicated, as did her letter to the court,

[11] The letter was provided to the court and is contained in the court's file.
[12] This letter also is in the court's file.

attorney Condio's beliefs that Kyle's mental health rendered him incapable of understanding the nature of the charge, that he could not assist in his defense, that he did not understand the range of punishment and that he did not understand the meaning of a youthful offender conviction. Attorney Condio emphatically opposed any protective order and asked that Kyle's matter be followed in Juvenile Court. Quite poignantly, the letter indicated that while attorney Condio understood the state's obligation to protect the citizens of this state and to seek justice, cases such as Kyle's did not fit squarely within the state's mandate.

The court then indicated that it wanted to meet with counsel in chambers to discuss the appropriate action to take in this matter. The prosecuting attorney, however, was not able to attend such a meeting at that time and asked that the matter be continued to a date that would also permit attorney Condio to be present. The matter was continued to August 27, 2008, to allow this court a final opportunity to resolve the matter prior to being assigned to a different judicial district for the 2008-2009 judicial term.

The matter proceeded on August 27, 2008. Present were attorneys Christie, Ovian, Condio and Collins, department worker Aiken, as well as Kyle and both of his parents. Attorney Ovian stated that unless the court were willing to act unilaterally to resolve the case, that he would want the court to reconsider having Kyle's competency evaluated. Attorney Christie requested that the court hear the reasons for the competency evaluation request. Attorney Ovian then renewed his motion for a competency evaluation on the basis of the same grounds previously indicated to the court. The court then recessed to meet with counsel in chambers for further discussions.

When the matter reconvened, the court ordered the matter dismissed. The court emphasized the differences

between the goals of the Juvenile Court system and youthful offender matters of the criminal docket. In the former, matters of neglect and delinquency are adjudicated, and in the latter, adjudication leads to young persons having no criminal record. This had its genesis in Kyle's behavior directed toward his father, which both of his parents could not control. Now that Kyle was receiving the help and services put in place by the Juvenile Court, the parents did not want the youthful offender matter to continue progressing and did not want to assist in his prosecution by testifying against Kyle. Stated somewhat differently, the parents' cry for help had not fallen on deaf ears, and Kyle, whose life had been spiraling out of control, was receiving the services, therapy and stabilization necessary to address his significant mental health issues. The court specifically noted that it was satisfied that Kyle's family was sufficiently protected by his involvement in Connecticut Junior Republic. The court also emphasized that it thought the goals of our criminal justice system had been fulfilled by counsels' actions in this case.

The court again stressed that by dismissing the case, it did not want to undermine the state's ability to prosecute criminal cases. In this specific case, however, the court saw no purpose in further prosecution of the matter and no purpose in ordering a competency evaluation. Here, a just result was achieved via the youthful offender case triggering Juvenile Court proceedings directing much needed assistance to a troubled youth now in the department's custody and residing at Connecticut Junior Republic. A competency evaluation quite possibly resulting in Kyle's commitment, potentially for a period longer than the maximum term of prison confinement for a disorderly charge conviction, was not a just result. It also was not in the interest of justice to leave the matter pending against Kyle as some sort of sword of Damocles continually threatening the

meaningful accomplishments obtained through Juvenile Court, accomplishments that ultimately sought the reunification of Kyle with his family.

The court last noted that the prosecuting authority had neither chosen to enter a nolle prosequi in adult court, nor opted to not prosecute this case in the youthful offender court. The court underscored that it was a court of equity as well as a court of law, and that it was part of its jurisdiction to see that justice is served. In this case, the court was confident that the ends of justice were met by dismissing the matter and not continuing in a prosecution that would result in harm instead of remedying harm.

The court requested a copy of Kyle's Juvenile Court record subsequent to dismissing the case. The information contained in the Juvenile Court record did not, except as conveyed to this court by counsel in this matter, form the basis for the dismissal. The records do show that the Juvenile Court found that commitment of Kyle to the custody of the department beginning June 6, 2008, was in his best interest. The department's commissioner was ordered to file a status report on or about December 19, 2008. Also, a motion for review of the permanency plan was to be filed on or before March 12, 2009.

Thus, the dismissal of this case did not leave Kyle as someone free from the legal consequences of his actions.[13] He was ordered into the custody of the department and became a resident of Connecticut Junior

---

[13] In 2007, the legislature enacted statutory changes that take effect January 1, 2010. See Public Acts, Spec. Sess., June, 2007, No. 07-4, §§ 73 through 78, 81, 82, 87, 88 and 123. Most pertinent, the changes yet to take effect would result in matters such as Kyle's being addressed in Juvenile Court and not on the youthful offender docket of the criminal court. Thus, in the future, the tortured and highly inefficient means of employing the appropriate and necessary resources to individuals such as Kyle will become more streamlined. Additionally, a charge brought on the regular criminal docket would then not serve, as happened in this case, to trigger the involvement of Juvenile Court proceedings and services more attuned to the prob-

Republic. He has received the mental health treatment and other services deemed appropriate by the department or Connecticut Junior Republic. All the efforts employed by the courts and agencies, as well as all counsel, excluding the prosecuting attorney, have sought to arrive at a just result arrived at by consensus. The prosecution's inability to deviate from its entrenched position of not entering a nolle prosequi in this matter does a monumental disservice to Kyle, his parents, the efforts wrought through Juvenile Court and the aspirations of the Juvenile Court system itself.

It is for the foregoing equitable reasons that the court dismissed the case. Although the court fully understands the state's right and duty to appeal, the continued prosecution of Kyle in the youthful offender matter, including in the context of an appeal, no longer is being pursued in the interest of justice. By granting the state's request to appeal, the court wholeheartedly invites appellate review of this matter and a determination of whether the goals of both the youthful offender and Juvenile Court proceedings have been accomplished in this matter. Any such review and determination must focus not only on this court's authority for dismissing the case, but also on whether the judicial system has arrived at a just result.

---

lems associated with individuals such as Kyle, all the while leaving the criminal charges pending on the youthful offender docket as potential leverage to be used by the state.